IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER GAUDINO, | : | CIVIL ACTION NO. **3:CV-12-2159** |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| STROUDSBURG AREA SCHOOL | : | |
| DISTRICT, | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM AND ORDER**

## I.      Background.

On October 31, 2012, Plaintiff Christopher Gaudino filed a Complaint against

Defendant, Stroudsburg Area School District pursuant to § 504 of the Rehabilitation Act, 29

U.S.C. § 794(a) (Doc. 1, ¶ 4), Title II of the Americans with Disabilities Act ("ADA"), 42

U.S.C.  §12132, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), and

Common Law Negligence as stated in the Restatement (Second) of Torts, § 320 (Doc. 1, ¶

6).  Both Plaintiff and Defendant are located in Stroudsburg, Monroe County, Pennsylvania.

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331. The Court can

exercise supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C.

§1367.

In response to Plaintiff's Complaint, the Defendant filed a Motion to Dismiss pursuant

to Rule 12(b)(1) and for Failure to State a Claim, pursuant to Rule 12(b)(6), on November 30,

2012.  **(Doc. 4)**.  On the same day, Defendant filed a Brief in support of its Motion to

Dismiss. (Doc. 5). On December 13, 2012, Plaintiff filed an Opposition Brief to Defendant's Motion. (Doc. 8). Defendant filed a Reply Brief on December 27, 2012. (Doc. 9).

On February 19, 2013, Plaintiff and Defendant both consented to the jurisdiction of the undersigned Magistrate Judge for all matters. (Docs. 13-14). On February 20, 2013, the consent was approved by the Court. (Doc. 15).

Defendant's Motion to Dismiss is ripe for disposition.

## II.    Allegations of Complaint, Doc. 1.

Plaintiff states that from September of 2008 through June of 2012, he was a student in Defendant's schools. Plaintiff avers in his Complaint that Defendant failed to accommodate his educational needs as a handicapped student, *i.e.*, he suffers from Attention Deficit Hyperactivity Disorder ("ADHD"), and that Defendant did not provide him with an educational environment free from sexual harassment. Plaintiff also alleges that Defendant was negligent in protecting him from the tortious acts of another student. (Doc. 1, ¶'s 5, 7 & 10). Plaintiff avers that prior to his enrollment with Defendant's schools, he went to Sayreville School District in New Jersey and that this district prepared an Individual Education Plan ("IEP"), pursuant to the Individuals with Disabilities Education Act ("IDEA"), for Plaintiff after his 8th grade year in 2008 in which it recommended he receive individual instruction for most of his academic courses (English, Reading, Math, Science, and History classes) and to be in a regular education setting less than 40% of the school day. (Doc. 1, ¶¶ 14, 15).

Plaintiff's family moved to Stroudsburg in the summer of 2008 and Defendant Stroudsburg Area School District, aware of Plaintiff 's disability, prepared a new Individual Education Plan for Plaintiff that Fall through their Special Education Department. (Doc. 1, ¶'s 16- 17). The Defendant's Special Education Department granted the Plaintiff "Learning Support - Supplemental." (Doc. 1, ¶ 18). Plaintiff's grades in his 9th grade year (2008-2009) with Defendant's school ranged from 69 to 78 with an average below 74%. (Doc. 1, ¶ 19). Plaintiff's teachers made it clear that they were aware of Plaintiff's slow and inconsistent progress toward his academic goals. (Doc. 1, ¶ 20). According the Complaint, Plaintiff required individual instruction. (*Id*.). Plaintiff asked for assistance and required a classroom aide to help him to understand instructions and concepts, but no aide was provided to assist him. (Doc. 1, ¶ 21).

Plaintiff's Complaint also avers that a female student called "A.R." who suffered her own learning disability would distract and annoy the Plaintiff beginning in 9th grade. (Doc. 1, ¶¶ 23, 24). Plaintiff alleges that A.R. repeatedly acted inappropriately toward the Plaintiff by calling him names, whispering to him, or touching him in ways that made him uncomfortable. (Doc. 1, ¶ 25). Plaintiff complained of A.R.'s misconduct to his teachers and caseworker, Mr. Snuffer, but the Defendant did nothing to alleviate Plaintiff's distress form the interruptions and interactions caused by A.R. (Doc. 1, ¶¶ 26, 27). A.R. allegedly told Plaintiff "we are going to have sex and you can touch my breasts. (Doc. 1, ¶ 37). Plaintiff also complained to his teachers that he was having trouble and he needed more individual assistance but to no avail. (Doc. 1, ¶¶ 38).

In tenth grade, spring of 2010, Plaintiff complained about A.R.'s conduct to the paraprofessional assigned to A.R., Diane Feagle. (Doc. 1, ¶ 39). Neither Ms. Feagle, nor any of Plaintiff's teachers took any action that had a lasting effect on A.R.'s conduct. (Doc. 1, ¶ 40). Plaintiff also alleges that he was bullied by mainstream students at Defendant's school and threatened to harm himself, and that Defendant did not offer him the opportunity to attend the intermediate unit. Plaintiff avers that Defendant was "callously indifferent to [his] educational and emotional needs." (Id., ¶'s 44-48).

In 10th grade, Plaintiff began study at Stroudsburg High School (Doc. 1, ¶ 28). Plaintiff's teachers recommended that he stay in learning support for all core subjects but Defendant placed him in learning support only for Reading, English, and Science (Doc. 1, ¶ 29). All of Plaintiff's other classes (Geometry, Algebra, and Auto Collision) were with mainstream students in Defendant's regular curriculum (Doc. 1, ¶¶ 29, 30). Plaintiff's mother, Diane Latham, informed the Defendant that she disagreed with Defendant's choice to mainstream the Plaintiff because she did not believe him to be capable of handling ordinary education, but Defendant said that Plaintiff had to be integrated into regular classes (Doc. 1, ¶¶ 31, 32). Plaintiff's testing indicated that he possessed academic skills at the level of an elementary school student (Doc. 1, ¶32). Plaintiff complained of his academic struggles and continued harassment to school guidance counselors and his caseworker, Ms. Diane Nelson (Doc. 1, ¶ 42).

In April of 2010 (tenth grade for Plaintiff), he was removed from Auto Collision class for alleged immature behavior, missed assignments, and an inability to follow directions.

(Doc. 1, ¶ 43). Plaintiff states that he required additional guidance from the instructor to understand the course expectations. (*Id*.). Also in the Spring of 2010, Plaintiff suffered bullying from other mainstream students and told a guidance counselor that he wanted to hurt himself or commit suicide as a result of the bullying, academic struggles, and harassment from A.R. (Doc. 1, ¶ 44).

In October of 2010 (eleventh grade), Plaintiff avers that he continued to receive low grades and made minimal progress toward his IEP goals. Plaintiff also avers that A.R. pushed him into the lockers outside the school lunchroom and touched his private parts on purpose. (Doc. 1, ¶'s 54- 56). Lunch Monitor Maureen Hamilton instructed Plaintiff to fill out an incident report with the main office, and Plaintiff reported the incident to Stroudsbug High School Assistant Principal Thomas Burke. (Doc. 1, ¶¶ 57, 58). Plaintiff did not hear back from Defendant so he re-reported the incident with the school. (Doc. 1, ¶ 59). When Plaintiff received no response again, he went with his mother to file a report with Stroudsburg Police. (Doc. 1, ¶ 60). Neither the Defendant nor the Police ever followed up regarding the incident. (Doc. 1, ¶ 62). Plaintiff states that A.R.'s conduct was so severe and pervasive that it detracted from his ability to learn. (Doc. 1, ¶ 64).

In October or November of 2010 (eleventh grade for Plaintiff), the IEP team reviewed Plaintiff's IEP Plan (Doc. 1, ¶ 51). Plaintiff's grades in the first marking period of eleventh grade averaged 71.6 but Defendant kept Plaintiff in mainstream classes for all electives. Thus, Plaintiff had half of his classes in Learning Support and half in a general education setting. (Doc. 1 ¶¶ 52, 53). Plaintiff's grades in the second marking period of the same year

carried a 65.5% average. (Doc. 1, ¶ 65). In or around February 2011, Defendant

implemented a Positive Behavior Support plan to address Plaintiff's emotional struggles.

(Doc. 1, ¶ 68). Defendant also sought a Psychiatric Evaluation that determined Plaintiff

required a more specialized education. (Doc. 1, ¶ 69). In March 2011, a new IEP was

drafted that recommended Plaintiff attend a partial hospitalization school program run

through Colonial Intermediate Unit 20, which was located at Stroudsburg High School.

(Doc. 1, ¶ 70). Plaintiff would receive individual instruction and support for more than 80%

of each school day. (Doc. 1, ¶ 71).

In the Fall of 2011 (twelfth grade for Plaintiff), he attended the partial hospitalization

program administered by Colonial Northampton IU20 at its new location, Pleasant Valley

High School. (Doc. 1, ¶ 74). Plaintiff made tremendous improvements academically; his

grades averaged 83.7%. (Doc. 1, ¶ 75). In June of 2012, Plaintiff graduated from

Defendant. (*Id.*, ¶ 77).

Plaintiff alleges that for over three years, Defendant failed to give him the appropriate

educational environment and that Defendant failed to provide him with an environment

free from sexual harassment by A.R. (*Id.*, ¶'s 78-80).

In Count I, Plaintiff raises his claim under §504 of the Rehabilitation Act. As relief,

Plaintiff seeks monetary damages, both compensatory and punitive damages. (*Id.*, ¶'s 83-

93).

In Count II, Plaintiff raises his claim under Title II of the ADA. As relief, Plaintiff seeks

monetary damages, both compensatory and punitive damages, as well as costs and

attorney's fees.  (*Id.*, ¶'s 94-100).

In Count III, Plaintiff raises his claim under Title IX.  As relief, Plaintiff seeks monetary damages, both compensatory and punitive damages, as well as costs and attorney's fees. (*Id.*, ¶'s 101-113).

In Count IV, Plaintiff raises his claim state law negligence claim.  As relief, Plaintiff seeks monetary damages, both compensatory and punitive damages, as well as costs and attorney's fees.  (*Id.*, ¶'s 114-120).

Plaintiff argues in his Brief in Opposition to Defendant's Motion to Dismiss that this later improvement in 12th grade when he was placed by Defendant in the partial hospitalization program administered by the intermediary unit (Colonial Northampton IU20) shows that he was always capable of performing but that Defendant failed to provide him with proper and adequate educational environment and assistance to meet his disability  in 9th, 10th, and 11th grades.  (Doc. 8, p. 14).

## III.    Motion to Dismiss Standards.

*1.  Rule 12(b)(1) Motion*

In *Johnson v. U.S. Attorney's*, 2010 WL 2991409, *1 (E.D. Pa. 7-27-10), the Court stated the standard of review with respect to a Rule 12(b)(1) Motion as follows:

> Pursuant to Federal Rule of Civil Procedure 12(b)(1), when "considering a motion to dismiss for lack of subject matter jurisdiction, the person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation." *Fed. Realty Inv. Trust v. Juniper Props. Group,* No. 99-3389, 2000 WL 45996, at *3 (E.D.Pa.2000) (citing *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1045 (3d Cir.1993)). The district court, when reviewing a motion to dismiss for lack of subject matter jurisdiction, "must accept as true the

7

allegations contained in the plaintiff's complaint, except to the extent federal jurisdiction is dependent on certain facts." *Id.* (citing *Haydo v. Amerikohl Mining, Inc.,* 830 F.2d 494, 496 (3d Cir.1987)). The district court is not confined to the face of the pleadings when deciding whether subject matter jurisdiction exists. *Id.* (citing *Armstrong World Indus. v. Adams,* 961 F.2d 405, 410, n. 10 (3d Cir.1992)). "In assessing a Rule 12(b) (1) motion, the parties may submit and the court may consider affidavits and other relevant evidence outside of the pleadings." *Id.* (citing *Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police,* 920 F.2d 198, 200 (3d Cir.1990)).

2. *Rule 12(b)(6) Motion*

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the

Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the
>
> factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts

as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (*quoting Twombly,* 550 U.S. at 555) (not precedential).

**IV.**     **Discussion.**

*1. Statute of Limitations*

Initially, we find that the statute of limitations has not lapsed on any of Plaintiff's

claims.  Defendant argues that a 2-year statute of limitations applies to Counts I, II and III of

Plaintiff 's Complaint (*i.e.,* the federal claims), that Plaintiff asserts these claims from as far

back as 2007-2008 (time Plaintiff was in 8th grade) and, that these Counts, to the extent they

relate to claims which occurred before October 31, 2010, are time barred.  The statutes

relied upon by Plaintiff in his Complaint to support his federal claims do not expressly

contain statutes of limitations.  When federal law gives rise to the cause of action but does

not specify a statute of limitations, an appropriate limitation will be drawn from forum state law. *See North Star Steel Co. v. Thomas,* 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995); *Hardin v. Straub,* 490 U.S. 536, 538–39, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989).

The District Court for the Middle District of Pennsylvania recently decided a case on point. *See Weidow v. Scranton Sch. Dist.,* 3:08-CV-1978, 2009 WL 2588856 (M.D. Pa. Aug. 19, 2009), affirmed 460 F. App'x 181 (3d Cir. 2012).

The Court in *Weidow* stated:

> The statute of limitations applicable to claims under § 504 of the Rehabilitation Act and Title II of the ADA is the forum state's statute of limitations for personal injury actions. *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.,* 539 F.3d 199, 208 (3d Cir.2008). In Pennsylvania, a two-year statute of limitations applies. *Id.;* 42 Pa. Cons.Stat. § 5524.
>
> In addition, when a statute of limitations is borrowed from the forum state's law, the relevant state tolling rules are also incorporated. *Weis–Buy Services,* 411 F.3d at 422 (citing *Hardin,* 490 U.S. at 539). Pennsylvania law contains a statutory minority tolling rule which states:
>
>> (i) If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter.
>>
>> (ii) As used in this paragraph, the term "minor" shall mean any individual who has not yet attained 18 years of age.
>>
>> 42 Pa. Cons.Stat. § 5533(b)(1)(i)-(ii).

2009 WL 2588856, *7.

Pursuant to *Weidow*, we find that Plaintiff was an unemancipated minor and we agree with the Plaintiff that the statute of limitations for his federal claims did not commence

until his eighteenth birthday which was November 8, 2010, since Plaintiff states that he was a minor until this date. (Doc. 8, p. 20). As such, Plaintiff's date of birth is November 8, 1992. Also, Plaintiff indicates that he was 19 years old at the time the Complaint was filed in this case. Thus, based on Pennsylvania's statutory minority tolling rule, we find that Plaintiff had two years from November 8, 2010, to file his instant claims in this case. Therefore, we find that since Plaintiff filed all of his federal claims contained in Counts I-III of his Complaint on October 31, 2012, they were filed within the applicable statute of limitations.

Accordingly, we will deny Defendant's Motion to Dismiss Plaintiff 's federal claims as time barred.

*2. IDEA Exhaustion*

Defendant also argues that Counts I and II of Plaintiff's Complaint should be dismissed because the Court lacks subject matter jurisdiction since Plaintiff failed to exhaust his administrative remedies as required by the IDEA. Plaintiff states that he has not commenced his action under the IDEA, 20 U.S.C. §§ 1400, *et seq*. ("IDEA").[1] (Doc. 8, p. 16). Plaintiff states that his claims are under §504 and the ADA. As indicated, Plaintiff generally avers that he was a student with a disability and that Defendant discriminated against him in education. Plaintiff concedes that "exhaustion of the IDEA's administrative remedies is required not only for actions brought under the IDEA, but also for other actions

---

[1]Effective July 1, 2005, this statute was amended by the Individuals with Disabilities Education Improvement Act of 2004 Pub. L. No. 108-446. *See Maria C. ex rel. Camacho v. School Dist. of Philadelphia*, 142 Fed. Appx. 78, 79, n. 1 (3d Cir. 2005).

brought seeking relief that is also available under the IDEA." (*Id.*, pp. 16-17). Plaintiff cites

to *Swope v. Cent. York Sch. Dist.*, 796 F.Supp. 2d 592, 598 (M.D. Pa. 2011). Plaintiff also

states that he is only seeking monetary damages in his Complaint and not "compensatory

education" as Defendant claims he is seeking, and that money damages are not available

under the IDEA.

    The Court in *Brett S. v. The West Chester Area School Dist.*, 2006 WL 680936, *1

(E.D. Pa.), stated:

> In order to receive federal education funding under the IDEA,
> a state must provide disabled children [FN2] with a "free appropriate
> public education" ("FAPE"). 20 U.S.C. § 1412(a)(1). "Free and
> appropriate public education" means "special education and
> related services" that:

>> FN2. The IDEA defines "children with disabilities"
>> as children who need special education because of
>> "mental retardation, hearing impairments (including
>> deafness), speech or language impairments, visual
>> impairments (including blindness), serious emotional
>> disturbance, orthopedic impairments, autism,
>> traumatic brain injury, other health impairments, or
>> specific learning disabilities." 20 U.S.C. § 1401(3)(A).

> (A) have been provided at public expense, under public
> supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary, or secondary
> school education in the state involved; and
> (D) are provided in conformity with the individualized education
> program required under section 1414(d) of this title.
> 20 U.S.C. § 1401(8). [FN3] The primary mechanism for delivering
> a FAPE is through an individualized education program ("IEP"),
> which tailors educational services to meet the child's
> specific needs. 20 U.S.C. § 1414(d); *Ridgewood Bd. of Educ. v.
> N.E.*, 172 F.3d 238, 247 (3d Cir. 1999).

FN3. "Special education" is defined as "specifically designed instruction, at no cost to parents or guardians, to meet the unique needs of a handicapped child." 20 U.S.C. § 1401(25). "Related services" are defined as "such developmental, corrective and other supportive services . . . as may be required to assist a child with a disability to benefit from special education." § 1401(22).

*See also James S. Ex rel. Thelma S. v. Sch. Dist. of Phila.*, 559 F. Supp. 2d 600, 621 (E. D. Pa. 2008).

As stated, Plaintiff does not directly raise claims under the IDEA. Rather, Plaintiff asserts claims under Section 504 of the Rehabilitation Act and under the ADA. Plaintiff avers that he was a student with a learning disability, *i.e.*, ADHD, under the ADA and §504.

As the Court stated in *Colon v. Colonial Inter, Unit 20,* 443 F. Supp. 2d 659, 665 (M.D. Pa. 2006):

This statute prohibits discrimination against the disabled in federally funded programs. Specifically, the law provides:

No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . 29 U .S.C. § 794(a).

The IDEA and section 504 provide equivalent requirements. The IDEA provides an affirmative duty to provide education, whereas the Rehabilitation Act prohibits discrimination against the disabled. *W.B. v. Matula*, 67 F.3d 484, 492-93 (3d Cir. 1995).

The Court in *James S*. stated:

To ensure that local educational agencies comply with the

13

IDEA's substantive provisions, the statute requires states to guarantee certain procedural rights in order to qualify for funding. Under the IDEA, complaints are reviewed at an impartial due process hearing conducted by the state or local education agency. *See* 20 U.S.C. § 1415(f); 34 C.F.R. § 300.511. If a due process hearing is conducted at the local level, an appeal may be taken to a state agency which must render a final decision within thirty days. *See* 20 U.S.C. § 1415(g)(1); 34 C.F.R. § 300.515(b). A party aggrieved by the state educational agency's decision may appeal to a federal or state court of competent jurisdiction. *See* 20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.516(a).

559 F. Supp. 2d at 612-13.

Further, "the provisions of the IDEA granting federal courts jurisdiction only permits suit by a 'party aggrieved by the findings and decisions made' in the administrative process. 20 U.S.C. §1415(i)(2)(A)." *Id*. at 613.

The Court in *James S. Ex rel. Thelma S. v. Sch. Dist. of Phila*., 559 F. Supp. 2d at 611, also stated as follows with respect to the IDEA exhaustion requirement:

The IDEA requires that a party exhaust administrative procedures before seeking relief in federal court. *See* 20 U.S.C. § 1415(i)(2); *Honig v. Doe,* 484 U.S. 305, 326-27, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) ("[J]udicial review is normally not available under [§ 1415(i)(2) ] until all administrative proceedings are completed ...."). In Pennsylvania, exhausting administrative remedies consists of participating in a due process hearing and taking an appeal to the state appellate body. *See* 22 Pa.Code § 14.162; *Blunt v. Lower Merion Sch. Dist.,* No. 07-3100, 2008 WL 442109, *5 (E.D.Pa. Feb. 15, 2008) (describing two-level review process in Pennsylvania); *Kristi H. v. Tri-Valley Sch. Dist.,* 107 F.Supp.2d 628, 631 (M.D.Pa.2000) (same). Further, before bringing suit under Section 504 or the ADA "seeking relief that is also available under the IDEA," a party must exhaust administrative remedies to the same extent as required under the IDEA. *See* 20 U.S.C. § 1415(*i*); 34 C.F.R. § 300.516(e). The IDEA administrative exhaustion requirement "allows a school district to bring its expertise to bear and affords the state an opportunity to correct its own mistakes." *McKellar v. Com. of Pennsylvania Dept. of Educ.,* No. 98-4161, 1999 WL 124381, *2 (E.D.Pa. Feb.23, 1999) (citing *McKart v. United States,* 395 U.S. 185, 193-95,

89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

*Id*. at 615-16.

"The Third Circuit has recognized exceptions to the IDEA's exhaustion requirement" and we find that these exceptions apply to the Plaintiff's case. *Id.* at 616. With respect to the exceptions, the *James S.* Court stated:

> "Specifically, the Third Circuit has held that exhaustion may be excused where: (1) it "would be futile or inadequate"; (2) the "issue presented is purely a legal question"; (3) "the administrative agency cannot grant relief (e.g., hearing officer lacks authority to provide a remedy)" or (4) "exhaustion would work severe or irreparable harm upon a litigant." *Komninos v. Upper Saddle River Bd. of Educ.,* 13 F.3d 775, 778 (3d Cir.1994) (quotation marks and citations omitted)."

*Id*.

The IDEA exhaustion requirement is jurisdictional. *See Blunt v. Lower Marion School Dist.*, 559 F. Supp. 2d 548 (E.D. Pa. 2008)(dismissing unexhausted claims for lack of jurisdiction under Rule 12(b)(1)).

In *Colon v. Colonial Inter, Unit 20,* 443 F. Supp. 2d 659, 668, the Court stated that "[g]enerally, exhaustion is, in fact, necessary for an IDEA claim. *See* 20 U.S.C. §1414(f). The Third Circuit Court of Appeals has held, however, that exhaustion is not necessary where the Plaintiffs seek compensatory damages."(citation omitted).

In *James S.*, the Court stated:

> "Although compensatory damages are available under Section 504 and the ADA, they are not available in IDEA administrative proceedings. *See W.B.,* 67 F.3d at 496; *J.F. v. Sch. Dist. of Philadelphia,* No. 98-1793, 2000 WL 361866, *7 (E.D. Pa. April 7, 2000) In *W.B.,* the Third Circuit held that exhaustion was excused where the parties had settled the plaintiffs' IDEA claims and the only issue remaining for the Court was the availability of damages under § 1983.FN11 67 F.3d at 495-96. The

> *W.B.* court held that the plaintiff was not required to exhaust IDEA's administrative procedures before seeking damages. *Id.* at 496.

559 F. Supp. 2d at 617-18(footnote omitted).

Additionally, in *Richter ex rel. Tate v. Sch. Dist. of City of Erie*, 2002 WL 655674, *6 (W. D. Pa.), the Court stated that monetary damages were not available in the IDEA administrative process.

Our Plaintiff's Complaint (*See* Doc. 1) indicates that Plaintiff seeks only monetary damages and thus, exhaustion is not required with respect to the claims for damages since this relief is not available in an IDEA administrative proceeding. *James S.*, 559 F. Supp. 2d at 617-18("a Plaintiff has no obligation to exhaust IDEA remedies before pursuing claims for damages not available under the IDEA.") (citation omitted).

Since Plaintiff is only seeking monetary damages in his Complaint, we agree with Plaintiff that he seeks only relief that cannot be granted by the IDEA. We therefore agree with Plaintiff and find that he is excused from exhaustion of the IDEA's administrative remedies and that this Court has jurisdiction over his claims contained in Counts I and II of his Complaint. As such, we will deny Defendant's Motion to Dismiss Counts I and II of Plaintiff 's Complaint for lack of subject matter jurisdiction.

3. *ADA and Rehabilitation Act Claims*

Further, Defendant argues that Plaintiff failed to sufficiently state claims under the ADA and §504 of the Rehabilitation Act. Plaintiff contends that while Defendant focuses on his 12th grade improvement, he directs the court's attention to his numerous allegations regarding his other 3 years of high school. As Plaintiff states, "[he] seeks damages for the

16

years Defendant ignored [his] education and his complaints of sexual harassment, supporting facts for which are well-pled in the Complaint and give rise to a reasonable expectation that discovery will reveal the necessary evidence." (Doc. 8, p. 20). We agree with Plaintiff that his allegations, as detailed above, are sufficient to state claims under the ADA and §504.

The Third Circuit in *Weidow v. Scranton Sch. Dist.*, 460 Fed. App'x. at 184, laid out the necessary elements of an ADA and a Rehabilitation Act claim in *Weidow*, and stated:

> Because "Congress has directed [that the ADA] be interpreted in a manner consistent with [the Rehabilitation Act]," we will consider her claims under those statutes together. *Yeskey v. Commonwealth of Pa. Dep't of Corr.*, 118 F.3d 168, 170 (3d Cir.1997); *see* 42 U.S.C. §§ 12134(b), 12201(a).

The Third Circuit in *Weidow*, also stated:

> To make out a prima facie claim for discrimination under the ADA or Rehabilitation Act, the plaintiff must establish that she has a disability, that she is otherwise qualified to participate in the services, programs, and activities of the school, and that she was subjected to discrimination because of her disability.[6] *Cf. Andrew M. v. Del. Cnty. Office of Mental Health and Mental Retardation,* 490 F.3d 337, 350 (3d Cir.2007) (applying the Rehabilitation Act and citing *Ridgewood Bd. of Ed. v. N.E. ex rel. M.E.,* 172 F.3d 238, 253 (3d Cir.1999), *superseded by statute on other grounds,* 20 U.S.C. § 1415(f)(3)(C), *as recognized in P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.,* 585 F.3d 727, 730 (3d Cir.2009)). In order to establish the disability element of an ADA or Rehabilitation Act claim, a plaintiff must show that she has "a physical or mental impairment that substantially limits one or more major life activities...."[7] 42 U.S.C. § 12102(1)(A); 29 U.S.C. § 705(20)(B). Major life activities, in turn, "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

*Id.* at 184-185(footnotes omitted).

We find that Plaintiff has adequately alleged his disability and his difficulty in conducting major life events as defined by the statute during his years of attending

Defendant's school. We also find that Plaintiff adequately alleged his qualification to participate in the services, programs, and activities of Defendant's school.  We agree with Plaintiff (Doc. 8, pp. 22-23) and find that, read in the light most favorable to Plaintiff, the averments in his Complaint present a factual basis and a plausible claim of discrimination under the ADA and §504 on which relief may be granted.  We will therefore deny Defendant's Motion to Dismiss Plaintiff 's claims under the ADA and §504.


### 4. *Title IX Claim*

Moreover, Defendant moves to dismiss Plaintiff 's claim under Title IX.   Defendant states that "[a]s a matter of law, Plaintiff cannot recover under his Title IX claims, even if every allegation of the Complaint were proven true because the alleged remarks do not rise to an actionable level."  (Doc. 5, p. 19).  Defendant contends that Plaintiff merely alleges peer teasing by A.R. and one instance of inappropriate touching.  However, Defendant maintains that Plaintiff failed to allege specific facts that it remained deliberately indifferent to this conduct by A.R. after it was on notice.    Defendant states that Plaintiff 's Complaint fials to allege that it "decidedly refused to take action upon receiving reports of sexual harassment."  (*Id.*, p. 20).  At most, Defendant states that Plaintiff 's allegations amount to only negligence and that this is insufficient to state a claim under Title IX.

Plaintiff points out that he has alleged relentless teasing and sexual harassment by A.R. for at least two years in Defendant's school, including the sexual assault incident, and

that this was reported and ignored by Defendant.  (Doc. 8, p. 23). Plaintiff also correctly

points out that he alleged the repeated teasing and sexual harassment by A.R. undermined

and detracted from his educational experience in Defendant 's school.   Further, Plaintiff

contends that he alleged that Defendant was deliberately indifferent to known acts of

harassment by A.R.

The Third Circuit detailed the elements of a Title IX claim by a student against a

school district as follows:

> [I]n 1999, in *Davis v. Monroe County Board of Education, supra*, the
> Court held that Title IX also permits a plaintiff to recover damages from
> a federally funded educational institution for certain cases of student-
> on-student sexual harassment. To recover in such a case, a plaintiff
> must establish sexual harassment of students that is so severe,
> pervasive, and objectively offensive, and that so undermines and
> detracts from the victims' educational experience, that the victim
> students are effectively denied equal access to an institution's resources
> and opportunities. *Id.* at 651, 119 S.Ct. 1661. This determination
> "'depends on a constellation of surrounding circumstances,
> expectations, and relationships,' including, but not limited to, the ages
> of the harasser and the victim, and the number of individuals
> involved." *Id.* (quoting *Oncale*, 523 U.S. at 82, 118 S.Ct. 998). The
> Court stressed that "[d]amages are not available for simple acts of
> teasing and name-calling among school children, even where these
> comments target differences in gender." *Id.* at 652, 119 S.Ct. 1661.
> Rather, private damages actions against the school are limited to cases
> in which the school "acts with deliberate indifference to known acts of
> harassment," and those acts have "a systemic effect on educational
> programs and activities." *Id.* at 633, 653, 119 S.Ct. 1661.[5]

*Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 205-06 (3d Cir. 2001)(footnote omitted).

We agree entirely with Plaintiff and find that he alleged the continuos harassment he

endured from A.R. was  severe, pervasive, and objectively offensive enough to show a

plausible claim under Title IX on which relief may be granted.  We find that Plaintiff has

alleged that Defendant was deliberately indifferent to known acts of harassment by A.R. as well as the sexual assault incident. Defendant argues that one act of sexual assault is not severe and pervasive enough to bring a Title IX claim. (Doc. 9, p. 4, citing *Dawn L. V. Greater Johnstwon Sch Dst.*, 586 F. Supp. 2d 332, 372, (W.D. Pa. 2008)). However, we find that Plaintiff does not allege a single incident, but a series of inappropriate incidents over the course of more than two years while attending Defendant's school and he alleges that Defendant turned a blind eye to those repetitive incidents after being put on notice of them. (*See, eg.*, Doc. 1, ¶¶ 37, 38). We further find that Plaintiff's Complaint avers that Defendant acted with deliberate indifference to known acts of harassment and that those acts hindered Plaintiff's ability to take part in educational programs and activities.

Therefore, we will deny Defendant's Motion to Dismiss Plaintiff's Title IX claim.

5. *Common Law Negligence Claim*

Finally, Defendant moves to dismiss Plaintiff 's state law negligence claim, Count IV, and asserts that under the Political Subdivision Tort Claims Act, 42 Pa. Cons.Stat. Ann. §8541 *et seq.* ("PSTCA") it is immune from such a claim. Defendant states that none of the exceptions to the PSTCA apply in this case. (Doc. 5, p. 21).

The Pennsylvania Supreme Court has stated the elements of a negligence claim as follows:

> It has long been held in this Commonwealth that to succeed on a negligence theory, four elements must be present: 1) a duty recognized by law requiring the actor to conform to a certain standard of conduct; 2) failure by the actor to observe this standard; 3) causation between the conduct and injury; and 4) actual damages. *Tomko v. Marks,* 412 Pa.Super. 54, 602 A.2d 890, 892 (1992) (citing *Casey v. Geiger,* 346

Pa.Super. 279, 499 A.2d 606, 612 (1985)).

*Vicky M. v. Ne. Educ. Intermediate Unit 19*, 486 F. Supp. 2d 437, 459 (M.D. Pa. 2007), <u>on</u>

<u>reconsideration,</u> CIV.A. 3:06-CV-01898, 2007 WL 2844428 (M.D. Pa. Sept. 26, 2007).

However, as this Court has held in similar cases, the Defendant School District is
immune from a negligence claim as a local agency under the PSTCA.

> The School District [is a] "local agenc[y]" as defined by the Political
> Subdivision Tort Claims Act, 42 Pa. Cons.Stat. Ann. § 8541 *et seq.* ("PSTCA")
> ... . Under the PSTCA, local agencies are immune from liability "for any
> damages on account of any injury to a person or property caused by any act
> of the local agency or an employee thereof or any other person." 42 Pa.
> Cons.Stat. Ann. § 8541. This immunity "is waived under § 8542 to the extent
> the agency would otherwise be liable for a narrow subset of negligent acts by
> its  agents or employees."[2] None of these exceptions apply to this case.
> Therefore, the general grant of immunity in section 8541 controls and
> insulates the [Defendant] from liability for Plaintiffs' tort claims. Furthermore,
> the ...  local agencies under the PSTCA, cannot be held liable for punitive
> damages.  *Marko v. City of Phila.*, 133 Pa.Cmwlth. 574, 576 A.2d 1193, 1194
> (1990).

*Vicky M. v. Ne. Educ. Intermediate Unit 19*, 486 F. Supp. 2d at 459-60(footnote omitted).

Liability may only be imposed against a local agency if the following exceptions
applied: (1) The damages would be recoverable if the action were committed by an ordinary
person rather than a local agency; (2) the negligent action or inaction by the local agency
caused the injury; and (3) the negligence claim arises from vehicle liability or said claim is
related to the care, control, maintenance or upkeep of personal property, real property,
trees, traffic controls and street lighting, utility service facilities, streets, sidewalks, or animals.
*See* 42 Pa. Cons. Stat. Ann. § 8542(b).  We agree with Defendant find that Plaintiff's alleged
negligence did not arise as a result of any of these exceptions to the PSTCA.  We also agree

with Defendant and find, based on the *Vicky M.* case, Defendant clearly has immunity with regard to Plaintiff's negligence claim as a local agency under the PSTCA.[2]

Thus, we will grant Defendant's Motion to Dismiss Plaintiff's Complaint (Count IV) with respect to the negligence claim and we will dismiss this state law claim with prejudice. We find futility in allowing the Plaintiff to amend his Complaint regrading his negligence claim because Defendant is immune. *See Vicky M., supra*.

6. *Plaintiff's Claims for Punitive Damages under the ADA, §504 and Title IX*

Plaintiff seeks, in part, punitive damages against the municipal Defendant with respect to all three of his federal claims under the ADA, §504 and Title IX. We shall *sua sponte* dismiss with prejudice Plaintiff's claims for punitive damages.

In *Pettigrew v. Middletown Area School Dist.*, 2006 WL 4032181, *3 (M.D.Pa. September 26, 2006), the Court stated:

> Plaintiffs seek punitive damages for the School District's alleged violations under the IDEA, Title II of the ADA, § 504 of the Rehabilitation Act, and 42 U.S.C. § 1983. The general rule is that a municipality [FN11] is not subject to punitive damages unless Congress intended to authorize these damages against a municipality. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 260, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *see also Doe v. County of Centre, Pa.,* 242 F.3d 437, 456 (3d Cir.2001). As applied to municipalities, such damages are against public policy because they punish "only the taxpayers, who took no part in the [violation]." *City of Newport,* 453 U.S. at 267.

22

---

[2]Defendant argued in its Reply Brief that the negligence claim should be dismissed pursuant to Local Rule 7.6, M.D. Pa.(stating that if a party does not file an Opposition Brief to a Motion to Dismiss, then the Motion to Dismiss is unopposed), since Plaintiff did not address it in his Opposition Brief. Regardless, we find that Defendant is clearly immune from Plaintiff 's negligence claim under the PSTCA.

FN11. *See E.D. v. Phila. Academy Charter Sch.,* No. 02-1716, 2003 WL 24052009, at *11 ("A public school district is a municipal entity.").

Plaintiffs cite to *W.B. v. Matula,* 67 F.3d 484 (3d Cir.1995), for the proposition that they are entitled to punitive damages for all of their claims. (Doc. 27 at 6.) However, *Matula* did not involve a municipality. *See id.* at 491 (stating that after "the parties consented or stipulated to the dismissal of a number of defendants .... [the plaintiff] sued nine persons in their official and individual capacities"). The Supreme Court held that a "municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport,* 453 U.S. at 271. Extending the rationale of *City of Newport,* the Third Circuit held that a municipality is immune from punitive damages under Title II of the ADA and § 504 of the Rehabilitation Act. *Doe,* 242 F.3d at 45558; *see also Barnes v. Gorman,* 536 U.S. 181, 189, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002).

*See also C.J.G. v. Scranton School Dist.,* 2007 WL 4269816 (M.D. Pa. Dec. 3, 2007).

Based on the above, we find that Defendant is immune from punitive damages under Title II of the ADA and § 504 of the Rehabilitation Act.

We also find that punitive damages against Defendant are unavailable with respect to Plaintiff's claim under Title IX. *See E.N. v. Susquehanna Twp. Sch. Dist.,* 1:09-CV-1727, *20 - *21, 2010 WL 4853700 (M.D. Pa. Nov. 23, 2010)(Court held that punitive damages were not available against a school district in private actions to enforce Title IX). As such, we will also dismiss with prejudice Plaintiff 's claim for punitive damages against Defendant under Title IX.

**V.**     **Conclusion.**

Accordingly, we will grant, in part, and deny, in part, Defendant's **Doc. 4** Motion to

Dismiss Plaintiff's **Doc. 1** Complaint.[3]

An appropriate Order follows.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 23 , 2013**

---

[3]After Defendant files its Answer to the remaining federal claims raised in Plaintiff's
Complaint, the Court will schedule a Joint Case Management Conference by separate
Order.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER GAUDINO, | : | CIVIL ACTION NO. **3:CV-12-2159** |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| STROUDSBURG AREA SCHOOL DISTRICT, | : | |
| | : | |
| Defendant | : | |

**ORDER**

**AND NOW,** this 23rd day of **July, 2013, IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Dismiss **(Doc. 4)** Count I of Plaintiff Gaudino's Complaint, Claim under §504 of the Rehabilitation Act, is **DENIED**.

2. Defendant's Motion to Dismiss **(Doc. 4)** Count II of Plaintiff Gaudino's Complaint, Claim under Title II of the Americans with Disabilities Act, is **DENIED.**

3. Defendant's Motion to Dismiss **(Doc. 4)** Count III of Plaintiff Gaudino's Complaint, Claim under Title IX of the Education Amendments of 1972, is **DENIED.**

4. Defendant's Motion to Dismiss **(Doc. 4)** Count IV of Plaintiff Gaudino's Complaint, state law negligence claim, is **GRANTED**, and Plaintiff's negligence claim is **DISMISSED WITH PREJUDICE**.

5.  Plaintiff's claims for punitive damages against Defendant under Title II of the ADA, § 504 of the Rehabilitation Act and Title IX, Counts I-III,  are **DISMISSED WITH PREJUDICE**.

     **s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 23, 2013**